FILED BY _LC_ D.C.

JUN 25 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT
S. D. OF FLA. - FT. PIERCE

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

### MIAMI DIVISION

### CASE NO.: 1:25-cv-21595-SINGHAL

JOHNNY MOORE,

Plaintiff,

v.

EQUIFAX INFORMATION SERVICES, LLC, et al.,

Defendants.

## PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT ON-SITE INSPECTION OF DEFENDANT TRANSUNION'S DATA AND OPERATION FACILITIES PURSUANT TO FED. R. CIV. P. 34(a)(2)

Pursuant to Federal Rule of Civil Procedure 34(a)(2), Plaintiff Johnny Moore (*"Plaintiff"*) respectfully moves this Court for an Order granting leave to conduct an on-site inspection of the core data processing architecture, database terminal networks, and operational centers operated or utilized by Defendant TransUnion, LLC (*"TransUnion"*). In support thereof, Plaintiff states as follows:

### I. PRELIMINARY STATEMENT & BASIS FOR RELIEF

This action is brought under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq., based on TransUnion's failure to maintain reasonable procedures to ensure the maximum possible accuracy of Plaintiff's consumer file, and its failure to perform a lawful reinvestigation of conflicting credit profiles, masked data, and systemic file suppressions.

Federal Rule of Civil Procedure 34(a)(2) explicitly authorizes a party to request entry onto an opposing party's designated property to "inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it."

Throughout this litigation, TransUnion has consistently withheld primary database transaction history, internal file management indicators, and dispute verification notes, often claiming technical limitations or proprietary trade secret protections. With the Court's entry of the Confidentiality and Protective Order (ECF No. 202), any colorable claim regarding proprietary

confidentiality has been fully resolved. An on-site inspection of TransUnion's data manipulation platforms and dispute processing terminals is strictly required to verify how Plaintiff's credit data is structurally isolated, suppressed, or modified.

## II. RELEVANT LEGAL STANDARD

Under Fed. R. Civ. P. 34(a)(2), physical entry and inspection are authorized when the specific corporate "operations" or technical infrastructure are directly relevant to the central elements of the claims. In consumer litigation, where a Credit Reporting Agency (CRA) asserts its automated workflows satisfy the statutory "reasonable procedures" mandate of 15 U.S.C. § 1681e(b), an empirical inspection is proper—especially when conventional document production has yielded incomplete or fragmented records.

## III. ARGUMENTS IN SUPPORT OF INSPECTION

### A. Direct Relevance to TransUnion's Defense of Statutory Compliance

TransUnion maintains the defense that its data systems and automated reinvestigation protocols are legally sufficient. However, Plaintiff's files reflect severe structural anomalies, including split-file occurrences, suppressed consumer tradelines, and conflicting cross-profile metadata. To cross-examine TransUnion's assertions, Plaintiff must inspect the actual terminal interfaces and software workflows utilized by TransUnion's dispute analysts to observe how data is prioritized, masked, or deleted in real time.

### B. Inadequacy of Paper and Standard Electronic Production

TransUnion has produced incomplete, non-native printouts that mask the actual digital behavior of its internal credit databases. Standard document production cannot demonstrate how a TransUnion operator maneuvers between split consumer profiles, or how the system automatically handles incoming dispute codes. An on-site inspection is the only method to view the native display of Plaintiff's account data exactly as it appears to TransUnion's operational personnel.

### C. Absolute Safeguards Provided by ECF No. 202

TransUnion cannot claim an on-site inspection imposes an unmanageable risk to its proprietary systems or consumer database security. The Court's active Protective Order (ECF No. 202) provides an airtight mechanism. All observations, system metrics, terminal captures, or process screenshots recorded during the inspection can instantly be labeled "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY," guaranteeing zero exposure to the public or third parties.

## IV. PROPOSED SCOPE OF INSPECTION

To prevent undue burden or operational disruption, Plaintiff proposes the inspection be restricted to the following strict boundaries:

1. **Location:** TransUnion's primary consumer operations terminal facility, database hub, or a mutually agreed corporate processing center.
2. **Duration:** Limited to a single (1) business day, not to exceed eight (8) total hours.
3. **Permitted Activity:** Direct observation of data-querying processes utilizing Plaintiff's specific identifiers (SSN, DOB, Name); technical verification of data-masking rules and suppression flags applied to Plaintiff's profile; and testing of manual queue-routing protocols.

## V. LOCAL RULE 7.1(a)(3) CERTIFICATION

Pursuant to Southern District of Florida Local Rule 7.1(a)(3), Plaintiff certifies that he has conferred in good faith with active counsel for Defendant TransUnion regarding the discovery relief sought herein. Counsel has objected and denied consent to an on-site inspection, making judicial resolution necessary.

**WHEREFORE,** Plaintiff Johnny Moore respectfully requests that this Court enter an Order granting leave to conduct the on-site inspection of TransUnion's operational data facilities under the established protective parameters, alongside any further relief this Court deems just and proper.

Dated: June 24, 2026

Respectfully submitted,

Johnny Moore, *Plaintiff Pro Se*